## No. 783

### ERHART et v. SADGEBURY

No. 19322. Supreme Court

On motion to certify. Dock. Aug. 13, 1925; 3 Abs. 514.

147. BILLS AND NOTES—Does "notice of protest waived," written above signature of first endorser, deprive each successive endorser of legal rights possessed by an endorser which impose upon the holder of a note certain duties, as conditions precedent to the collection of a note from an endorser?

Charles W. Sadgebury, father of the president of the Dayton Ignition Co. loaned the company $1500 on June 13, 1922, and it executed a note payable to him due in 90 days. This note was renewed several times and on Dec. 9, 1922 was renewed by execution of another note made payable to Charles Sadgebury for $1500, to become due in six months.

This last note was signed by H. F. Sadge-bury, president of the company, and J. L. Stern, secretary and treasurer; also by Andrew Erhart and other indorsers, who had signed the previous note. Above the signature of H. F. Sadgebury on the last note however, was written, "notice of protest waived."

Suit was instigated against the company, H. F. Sadgebury, Stern, Erhart and the other indorsers by Charles Sadgebury, the payee, in the Montgomery Common Pleas. The president and secretary-treasurer did not defend, while the other indorsers, that is those signing subsequent to the first two, answered with several defenses.

The defenses were that no notice of dishonor or non-payment was given to Erhart and his brother indorsers, at the maturity of the note; and that note was altered by writing above the signature of the first endorser, "notice of protest waived." The verdict was for Charles Sadgebury, and this judgment was affirmed by the Court of Appeals on proceeding in error.

This case is in the Supreme Court and it is claimed by Erhart that endorsements following those of H. F. Sadgebury and Stern were signed at different times, dates and places and were not made in pursuance of a prior agreement among the endorsers; that they are mere accommodation endorsers; that no demand was made upon the maker; and that notice of dishonor or non-payment was given to the endorsers at least for three months after maturity of the note.

Section 8215 GC. provides: "When the waiver is embodied in the instrument itself, it is binding upon all parties; but when it is written above the signature of an endorser, it binds him only." It is argued that the statute literally interpreted explicitly states that the first endorser only is bound.

The purpose of the Negotiable Instruments Act was to make uniform among the states adopting it, a law pertaining to negotiable instruments and to obviate the conflict existing prior to its enactment. To do this, it is urged, necessitates a literal construction of 8215 GC. In reference to 8215 GC., it is said, "It requires that no endorser is to be bound by waiver not embodied in the instrument, merely because the same has been made by some other previous endorser."

Attorneys—Leach & Nolan for Erhart et; H. P. Williamson for Sadgebury; all of Dayton.